69613. CROSBY v. GEORGIA CASUALTY & SURETY
COMPANY et al.
69779. COTHERN v. GEORGIA CASUALTY & SURETY
COMPANY et al.

(327 SE2d 505)

DEEN, Presiding Judge.

Wayne Crosby, a logger, was killed while attempting to secure a load of logs by means of a metal cable attached to the trailer on which the logs were loaded. The decedent had driven the loaded trailer a distance of approximately one-half mile through the woods to a road, where the trailer was to be picked up by another truck and the logs transported to their ultimate destination. The cable apparently struck a power line as Crosby was attempting to throw it across the logs, and he was electrocuted.

Appellee Georgia Casualty & Surety Co. (Georgia Casualty) is the insurer of Crosby's employer's vehicles, and appellee Auto Owners Insurance Co. (Auto Owners) is the insurer of Crosby's own vehicles. Lynell Strickland Crosby (case no. 69613) is Crosby's widow, and Betty Jean Crosby Cothern (case no. 69779) is Crosby's former wife and guardian of his two minor children. Both appellants (Cothern acting in the capacity of next friend of the minor children) filed claims against appellees under decedent's automobile insurance policy and that of his employer, the latter as primary insurer and the former as excess insurer.

Appellee Georgia Casualty filed an action for a declaratory judgment, seeking a declaration of non-liability and also a stay and in-

junction against appellants. Auto Owners answered, counterclaimed, and cross-claimed for declaratory relief and an injunction. Ms. Crosby and Mrs. Cothern also counterclaimed and cross-claimed against Georgia Casualty and Auto Owners. All parties filed motions for summary judgment and, after a hearing, the trial court granted the insurers' motions and denied those of appellants. Appellants filed separate appeals from the award of summary judgment to the insurers; neither appealed the denial of her own motion. The separate appeals have been consolidated for the purpose of this court's review.

Appellants enumerate as error the court's awarding summary judgment on the basis that decedent's act of attempting to secure the logs by throwing a cable across them constitutes "conduct in the course of loading" the logging trailer. Appellants contend that there is a genuine issue of material fact regarding whether decedent's act was a part of the loading process or a separate activity. *Held*:

The relevant provisions in the policies issued by appellees are identical and read as follows: "This coverage does not apply . . . to any injury sustained by any person . . . if such injury . . . arises from conduct in the course of loading or unloading any motor vehicle unless the conduct occurs while such person is occupying such motor vehicle." OCGA § 33-34-2 (9) provides that "[t]he term ['operation, maintenance or use of a motor vehicle'] does not include . . . conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying it." OCGA § 32-6-21 prescribes that "(a) No vehicle shall be driven or moved on any public road unless such vehicle is constructed or loaded or covered so as to prevent any of its load from dropping, escaping or shifting in such a manner as to create a safety hazard . . . (b) No person shall operate or load for operation, on any public road, any vehicle with any load unless such load and any covering thereon is securely fastened so as to prevent said covering or load from becoming loose, detached, or in any manner becoming a hazard to other users of the public road."

It is undisputed in the instant case that the decedent was not occupying the vehicle when the fatal accident occurred. The issue hotly disputed is whether the requirement that the cargo be secured prior to its being transported over public roads means that the securing is a part of the loading process or is an act subsequent to and distinct from the process of loading. Appellee Georgia Casualty filed with its motion for summary judgment the affidavit of the decedent's employer stating, *inter alia*, that the lashing or securing of the logs is the last step of loading; appellant Crosby had filed with her motion for summary judgment the affidavit of an experienced independent logger stating, *inter alia*, that the lashing or securing is a separate operation performed after the loading has been completed. Appellants bolster their contention that the securing is a separate operation by

pointing out that the actual loading had been done in the woods some half-mile away from where the fatal accident occurred; they urge, therefore, that the exclusion does not apply and that they are entitled to recover under the insurance policies.

We find no Georgia cases precisely on point with that *sub judice.* Analogous cases, however, tend to support the position of appellees. In *Hodges Appliance Co. v. U. S. Fid. & Guar. Co.*, 133 Ga. App. 936 (213 SE2d 46) (1975), the issue was whether a sofa which was removed from a truck and placed on a floor furnace, and which subsequently caught on fire, was covered by an insurance policy clause extending coverage to incidents occurring in the process of loading and unloading. This court held that, although some time passed between the sofa's removal from the truck and its bursting into flames, the occurrence was a part of the unloading process, and hence within the policy's coverage. Quoting a case from another jurisdiction, this court noted in *Hodges* that "[t]he precise line at which the unloading of the [vehicle] ends and a further phase of commerce such as the completion of delivery begins after unloading may . . . be difficult of ascertainment . . ." *Stammer v. Kitzmiller*, 226 Wis. 348 (276 NW 629).

Decisions in those jurisdictions which have adopted the "complete operation" or "continuing operation" theory as regards the meaning of "loading and unloading" (e.g., Texas, Florida, Wisconsin, Oklahoma, Michigan, New York, Rhode Island, California) support the *Hodges* rationale. See, e.g., *P. E. O'Hair & Co. v. Allstate Ins. Co.*, 72 Cal. Rptr. 690; *Crowley's Milk Co. v. American Mut. Liability Ins. Co.*, 313 FSupp. 502 (D.C. N.Y.); *Commercial Standard Ins. Co. v. American General Ins. Co.*, 455 SW2d 714 (Tex.). See also *Improved Machinery v. Merchants Mut. Ins. Co.*, 208 NE2d 796 (Mass.). Other jurisdictions have taken a different approach and have therefore reached a different result in their decisions. See, e.g., *Heape v. Bituminous Cas. Co.*, 36 Ill. App. 2d 131 (182 NE2d 918); *Travelers Ins. Co. v. Buckeye Union Cas. Co.*, 112 Ohio App. 386 (173 NE2d 173).

Applying the court's reasoning in *Hodges* to the instant case, in which the central issue is what constitutes the process of loading rather than unloading, we conclude that, since the purpose of loading logs at or near the site where they are cut is to enable them to be transported safely from that site to the mill (or other appropriate destination), the securing of the logs to the truck, trailer, or other mode of transport is an essential part of the loading process. The loading is a necessary antecedent to "a further phase of commerce"; namely, transportation. Thus the term "loading" as employed in the statute (and hence in the policy provisions) encompasses every act incident to or necessary to the cargo's being placed in the transport vehicle in

such manner as to make it ready for transportation.[1]

Scrutiny of the statutes and policy provisions involved in the case at bar persuades us that the trial court did not err in concluding that the lashing or securing of logs or similar items by means of a chain, cable, or similar device is the final step in loading the logs (or similar item) upon the vehicle in or on which they are to be transported, just as loosening the chain or cable (or other device) would be the first step in the unloading process. The language of the statute and of the policy provisions is quite clear and unambiguous in excluding acts in the course of loading or unloading, absent conditions which do not obtain here.[2] It is true that where the language of an insurance contract is ambiguous it must be construed in favor of the insured. *Travelers Indemn. Co. v. Whalley Constr. Co.*, 160 Ga. App. 438 (287 SE2d 226) (1981). However, "where the language fixing the extent of the liability of the insurer is unambiguous and but one reasonable construction is possible, the court must expound the contract as made." *Guarantee Trust Life Ins. Co. v. Davis*, 149 Ga. App. 826, 828 (256 SE2d 76) (1979). See also *Big Bear Ranches v. Ga. Farm Bur. Mut. Ins. Co.*, 169 Ga. App. 307 (312 SE2d 378) (1983); *Cobb County v. Hunt*, 166 Ga. App. 409 (304 SE2d 403) (1983).

Under the undisputed facts of this case, the plain language of the statute and the policies excludes appellants' decedent from coverage. There being no genuine issue of fact as to any material issue, appellees were entitled to judgment as a matter of law. OCGA § 9-11-56 (c).

*Judgment affirmed. Birdsong, P. J., Carley, Sognier, and Beasley, JJ., concur. Banke, C. J., McMurray, P. J., Pope and Benham, JJ., dissent.*

DECIDED FEBRUARY 5, 1985 —
REHEARING DENIED MARCH 5, 1985.

*Leon A. Wilson II, Benjamin Smith, Jr.*, for appellant (case no. 69613).

*Robert S. Highsmith*, for appellant (case no. 69779).

*David T. Whitworth, Terry A. Dillard, Bryant H. Bower, Jr., James Durham*, for appellees.

---

[1] Contrary to appellant's contentions, the fact that *Hodges* and similar cases involve inclusionary clauses rather than exclusionary clauses is of no significance in determining and applying the rationale.

[2] *Ga. Farm Bureau Mut. Ins. Co. v. Nelson*, 153 Ga. App. 623 (266 SE2d 299) (1980), cited in the dissenting opinion, is distinguishable on its facts from the case at bar; its conclusion that a certain act did not constitute "conduct in the course of loading and unloading the vehicle" is therefore inapplicable here.

McMurray, Presiding Judge, dissenting.

I respectfully dissent from the decision reached by the majority. In my opinion, the decedent's attempt to secure the cargo approximately one-half mile from the loading point was an act subsequent to and distinct from the process of loading. See *Ga. Farm Bureau Mut. Ins. Co. v. Nelson*, 153 Ga. App. 623, 629 (266 SE2d 299), wherein we held that the act of attaching a trailer (which had been loaded with lumber) to a tractor did not constitute "loading" within the meaning of Code Ann. § 56-3402b (h) (OCGA § 33-34-2 (9)). I would reverse the judgment of the trial court.

I am authorized to state that Chief Judge Banke and Judge Benham join in this dissent.